**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

K. ERIN HOHMANN,

               Plaintiff,

    v.                                    Civil Action No. 1:18-cv-10027-LTS

SEYFARTH SHAW LLP,

               Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Seyfarth Shaw LLP, by and through its undersigned attorneys, hereby submits this memorandum of law in support of its motion for summary judgment.

**INTRODUCTION**

Defendant discharged Plaintiff on October 6, 2016, because she committed errors that resulted in a large client of Defendant's making an overpayment in excess of $170,000, which she compounded through the exercise of poor judgment in her subsequent interactions with the client. This error led to a "firestorm" with the client that created a major client relations issue with this significant client who ultimately decided to cease doing business with Defendant as a result of Plaintiff's actions. Plaintiff's disability and her requests for access to Defendant's E-Billing Hub played no role in the decision to discharge her, as Plaintiff claims. Defendant was aware of Plaintiff's disability at the time it hired her and accommodated Plaintiff's disability throughout her nine years of employment. For these reasons and those set forth in more detail below, Defendant is entitled to judgment as a matter of law on all claims in Plaintiff's Amended Complaint.

## **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper if the record evidence shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Even in cases involving potentially elusive concepts such as motive and intent, summary judgment is proper where, as in this case, Plaintiff relies on "conclusory allegations, improbable inferences, and unsupported speculation."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

Although courts often liberally construe complaints filed by *pro se* litigants for purposes of resolving a motion to dismiss, "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).  Therefore, the Court must hold Plaintiff to the same standard as a represented party with respect to compliance with procedural rules and meeting the standards set forth in the substantive laws governing her claims on summary judgment.  *Strahan v. Rowley*, No. CIV.A. 11-11235-DPW, 2011 WL 7646206, at *3 (D. Mass. Dec. 20, 2011), *report and recommendation adopted*, No. CIV.A. 11-11235-DPW, 2012 WL 1114350 (D. Mass. Mar. 31, 2012), aff'd (Aug. 8, 2013) (noting that "pro se plaintiffs must comply with the applicable procedural and substantive rules of law").  This is especially true in this case because Plaintiff has had the assistance of counsel throughout this litigation.  An attorney reviewed her draft complaint, and another attorney reviewed her opposition to Defendant's motion to dismiss and her initial disclosures, and represented her at the mediation, and therefore Plaintiff was not "entirely bereft of benefits of counsel during this process."  *Ahmed v. Rosenblatt*, 118 F.3d at 890 n.7 (affirming summary judgment entered against *pro se* plaintiff).  *See* Pl. Dep. 66:21-72:21; Dkt. 66.

## ARGUMENT

Plaintiff's Amended Complaint asserts the following counts pursuant to the Americans with Disabilities Act ("ADA") and Mass. Gen. L. c. 151B: discrimination on basis of disability (Count I); retaliation (Count II); interference, coercion, intimidation (Count III)[1]; and failure to accommodate (Count IV). (Dkt. 52).

## I.   PLAINTIFF CANNOT ESTABLISH HER CLAIMS OF DISABILITY DISCRIMINATION OR RETALIATION

Plaintiff alleges that she was discharged because of her disability and retaliated against for requesting an accommodation for her disability.  Under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)[2], Plaintiff first must establish a *prima facie* case of discrimination or retaliation, and then the burden shifts to the Defendant to produce evidence that shows it had legitimate, non-discriminatory or non-retaliatory reasons for the alleged adverse employment action.  Once the Defendant makes that showing, the burden again shifts to Plaintiff to carry the ultimate burden of showing that the Defendant's proffered reasons are actually pretext for intentional discrimination or retaliation.

### A.   Plaintiff Cannot Establish A *Prima Facie* Case Of Disability Discrimination or Retaliation

#### 1.   Disability Discrimination

To establish a *prima facie* case of discrimination, Plaintiff must submit sufficient evidence that "(1) she is a member of a protected class; (2) she is qualified for the job she seeks; (3) she has suffer[ed] an adverse employment action at the hands of her employer; and (4) there

---

[1] In ruling on Plaintiff's motion to amend, the Court construed her interference, coercion and intimidation claim as a hostile work environment claim.  (Dkt. 49 at 2).

[2] "Chapter 151B tracks the ADA in virtually all respects."  *Smith v. The Pub. Sch. of Northborough-Southborough Mass*., 133 F. Supp. 3d 289, 295 (D. Mass. 2015) (citing *Gillen v. Fallon Ambulance Serv., Inc*., 283 F.3d 11, 20 n. 5 (1st Cir. 2002); *Everett v. 357 Corp.*, 453 Mass. 585, 610, n.33 (2009); *Russell v. Cooley Dickinson Hosp., Inc*., 437 Mass. 443, 449 (2002).

is some evidence of a causal connection between her membership in a protected class and the adverse employment action." *Luceus v. Rhode Island*, 923 F.3d 255, 258 (1st Cir. 2019) (Souter, J.) (quoting *Bhatti v. Trustees of Boston U.*, 659 F.3d 64, 70 (1st Cir. 2011)); *Dartt v. Browning-Ferris Indus., Inc.* (Mass.), 427 Mass. 1, 9–11 (1998) (*prima facie* case of handicap discrimination includes fourth element showing that adverse action occurred under circumstances suggesting an inference of discrimination).[3]

### a.   Plaintiff Was Not A Qualified Individual With A Disability

Plaintiff cannot establish the second element of the *prima facie* case because she was not a "qualified" individual with a disability.  A disabled individual who "engages in conduct significantly inimical to the interests of his employer and in violation of the employer's rules is not an 'otherwise qualified' person" within the meaning of applicable law "and therefore is not entitled to the protection of that statute."  *Garrity v. United Airlines, Inc.*, 421 Mass. 55, 63 (1995) (plaintiff was not a qualified individual where she "violated company policies by accepting from customers free drink coupons she was supposed to give to customers, using those coupons while flying on reduced rate passes . . . and being intoxicated during flights").

Here, Plaintiff's billing error and subsequent communications with the client about the overpayment resulted in the loss of a significant client.  Plaintiff clearly did not act in Defendant's best interests when she set in motion a chain of events that led to the loss of a significant client, and therefore, she is not a "qualified" individual with a disability under applicable law.  *See Calef v. Gillette Co.*, 322 F.3d 75, 86-87 (1st Cir. 2003) (plaintiff was not "qualified" due to continued confrontations with co-workers for which he was ultimately

---

[3] With respect to the first element, given that Defendant was aware that Plaintiff had a medical condition at the time it hired her and has continually accommodated her condition, Defendant does not dispute that Plaintiff was disabled for purposes of this motion.

discharged) (citing with approval *Mole v. Buckhorn Rubber Prod., Inc.*, 165 F.3d 1212, 1217 (8th Cir. 1999) ("To be a 'qualified individual' entitled to ADA protection, 'a plaintiff must show that [her] work performance met the employer's legitimate job expectations,' with or without reasonable accommodation.") (internal citation omitted)); *Hillstrom v. Best Western TLC Hotel*, 265 F. Supp. 2d 117, 124-25 (D. Mass. 2003) (Stearns, J.) (plaintiff failed to establish a *prima facie* case of discrimination under federal or state law, in light of unrebutted evidence that supervisor was dissatisfied with plaintiff's job performance); *Costa v. Gabriel Care, LLC*, 36 MDLR 132, 133-34 (July 23, 2014) (complainant failed to demonstrate she was a qualified handicapped individual due to record of poor performance, which included falsified mileage reimbursements, missed appointments with patients, and unacceptable office behavior).

Because Plaintiff is not a qualified individual with a disability, her disability discrimination claim fails, and Defendant is entitled to summary judgment on this claim.

> b.   Plaintiff's Discharge Did Not Occur Under Circumstances That Give Rise To An Inference of Discrimination

Under the fourth element of the *prima facie* case of discrimination, Plaintiff must present evidence that she was "treated less favorably than non-disabled employees" *Ramos-Echevarria*, 659 F.3d 182, 186 (1st Cir. 2011). However, in this case, Plaintiff has not identified any similarly situated non-disabled employee who engaged in the same conduct as she did and was not fired. In her deposition, Plaintiff could not identify any other biller who refunded more than $170,000 to a client without consulting anyone. Pl. Dep. 194:4-7. Indeed, Defendant is unaware of any other biller who engaged in the same conduct. *See* Answer to Interrogatory No. 20. ("Defendant is not currently aware of any other employee who committed the same actions as Plaintiff and certainly not with the same level of severity and with the same consequences and potential consequences").

The absence of any such evidence is fatal to Plaintiff's disability discrimination claim. *See e.g.*, *Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 251–52 (1st Cir. 2000) (concluding that plaintiff failed to establish *prima facie* case of discrimination under ADA where plaintiff "offer[ed] no evidence that other similarly situated employees without physical disabilities were treated differently"); *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 316-17 (1st Cir. 2016) (in case alleging racially discriminatory denial of overtime hours, concluding that plaintiff failed to demonstrate causal connection between membership in protected class and alleged adverse action for purposes of *prima facie* case where at least one other African-American employee was able to work requested overtime); *Salamo Martinez v. Celulares Telefonica, Inc.*, 272 F. Supp. 2d 144, 151 (D.P.R. 2003) (concluding that plaintiff failed to establish *prima facie* case of ADA disability discrimination where evidence showed he "was fired because he contravened established standard company policy" and the company terminated other non-disabled employees "under identical circumstances").

Because Plaintiff cannot establish a *prima facie* case of discrimination, her claim fails as a matter of law.

### B.     Plaintiff Cannot Establish A *Prima Facie* Case of Retaliation

In order to establish a *prima facie* case of retaliation, Plaintiff must show that "[s]he engaged in protected conduct, that [s]he suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'" *Mole v. University of Mass.*, 442 Mass. 582, 591-592 (2004) (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991)); *Scott v. Encore Images, Inc.*, 80 Mass. App. Ct. 661, 669 (2011) (affirming summary judgment to employer on Chapter 151B retaliation claim, concluding that plaintiff "has

no reasonable expectation of proving causation, an essential element of a viable retaliation claim").

1.      Plaintiff's Did Not Engage In Protected Activity

Plaintiff's retaliation claim fails out of the gate because she cannot establish the first element of the *prima facie* case, namely, that she engaged in protected activity.  When asked in her deposition what conduct formed the basis of her retaliation case, Plaintiff testified that it was her request for access to the HUB and her request for the support of her superiors in getting it. Pl. Dep. 187:9-24-188:1-14.

Courts in the First Circuit have held that, in retaliation cases under the ADA and Chapter 151B, a request for a reasonable accommodation for a disability may constitute protected activity.  *See Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003) (holding that "requesting an accommodation is protected activity for the purposes of" the ADA's anti-retaliation provision); *Gauthier v. Sunhealth Specialty Servs., Inc.*, 555 F. Supp. 2d 227, 244 (D. Mass. 2008) (requesting workplace accommodations for disability constitutes protected activity under Chapter 151B).

However, "[a]n accommodation request must be sufficiently direct and specific, and it must explain how the accommodation is linked to plaintiff's disability." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012).  *See also Murray v. Warren Pumps, LLC*, 821 F.3d 77, 84 (1st Cir. 2016) (same).  "The obligation is on the employee to provide sufficient information to put the employer on notice of the need for accommodation. This means not only notice of a condition, but of a 'causal connection between the major life activity that is limited and the accommodation sought.'"  *Jones*, 696 F.3d at 89 (internal citations omitted).[4]

---

[4] *See e.g., Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir. 2001) ("At the least, the request must explain how the accommodation requested is linked to some disability."); *Zavaglia v. Bos. Univ.*

Plaintiff admits that when she made her requests for access to the HUB, she did not specifically refer to it as an accommodation.  Pl. Dep. 110:1-9.  Indeed, when Plaintiff made requests for access to the HUB, she did not in any way connect them to her disability.  Rather, she simply either stated that she "would like to be a full cycle biller" or said she wanted access to the HUB in order to "streamline" things so they would be more "efficient."  Pl. Dep. Ex 17 at 1; Pl. Dep. Ex. 21.

This is patently insufficient to put Defendant on notice that she was seeking an accommodation for a disability.  As the First Circuit has held, "[a]n employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace."  *Reed*, 244 F.3d at 261 n.7.  Defendant had no reason to believe Plaintiff's request for access to the HUB were related to her disability.  Plaintiff was the one who was required to make that connection in her requests, and she did not.  Because she did not, her requests for access to the HUB were not requests for accommodation under the ADA. *See e.g.*, *Zavaglia v. Bos. Univ. Sch. of Med.*, No. 14-CV-13924-IT, 2018 WL 326409, at *4 (D. Mass. Jan. 8, 2018) (finding Plaintiff did not make a request for accommodation as a matter of law on summary judgment because "[t]he accommodation request and the physicians' letters do not explain why Plaintiff's disability required a later start time"); *Aulisio*, 2012 WL 3947738, at *6 (holding that Plaintiff had not make a request for accommodation as a matter of law on summary judgment where "Plaintiff testified that she made several requests for additional job

---

*Sch. of Med.*, No. 14-CV-13924-IT, 2018 WL 326409, at *4 (D. Mass. Jan. 8, 2018) ("An accommodation request 'must explain how the accommodation is linked to plaintiff's disability.'") (*quoting Jones*, *supra*); *Aulisio v. Baystate Health Sys., Inc.*, No. CIV.A. 11-30027-KPN, 2012 WL 3947738, at *6 (D. Mass. Sept. 7, 2012) ("To be sure, Plaintiff testified that she made several requests for additional job training for her new position; those requests, however, made no reference to her hearing impairment and, thus, cannot be considered requests for a reasonable accommodation. . . Similarly, Plaintiff's request to have someone sit in on her meetings . . . to take notes was equally deficient given the absence of any indication by Plaintiff that her request was related to a hearing impairment.").

training for her new position; those requests, however, made no reference to her hearing

impairment and, thus, cannot be considered requests for a reasonable accommodation.").

Accordingly, Defendant is entitled to judgment as a matter of law on her retaliation claim

on this basis alone.

2.      Plaintiff Cannot Establish Causation Between Her Alleged Protected
        Activity and Her Discharge

Even assuming for the sake of argument that Plaintiff's requests for access to the HUB

were protected activity, Plaintiff's retaliation claim would still founder because she cannot make

a causal connection between her requests for access to the HUB and her discharge as a matter of

law.  The only evidence that Plaintiff has cited in support of her retaliation claim is the fact that

she made requests for access to the HUB at some point prior to her discharge.  However,

chronological order does not equal causation.  Under the circumstances "causation may [only] be

inferred from a *very close* temporal relationship between the protected activity and the adverse

action."  *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 72 (1st Cir. 2011) (emphasis added).  "The

cases that accept mere temporal proximity between an employer's knowledge of protected

activity and an adverse employment action as sufficient evidence of causality to establish a prima

facie case uniformly hold that the temporal proximity must be 'very close.'"  *Clark Cty. Sch.*

*Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (*quoting O'Neal v. Ferguson Const. Co.*, 237 F.3d

1248, 1253 (10th Cir. 2001)) (holding that action taken 20 months after protected activity did not

permit inference of causation as a matter of law).  *See Willard v. MHM Corr. Servs., Inc.*, No.

CV 13-12354-LTS, 2015 WL 7194585, at *8 (D. Mass. Nov. 16, 2015) (Sorokin, J.) ("in making

out a *prima facie* case, '[v]ery close temporal proximity between protected activity and an

adverse employment action can satisfy a plaintiff's burden of showing causal connection.'")

(*citing Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 15 (1st Cir. 2012)).

In this case, the record evidence establishes no such "very close" proximity exists. Plaintiff began requesting access to the HUB in 2014 -- at least two years prior to her termination.  Pl. Dep. Exs. 17 and 18.  Plaintiff's discharge did not occur until October 7, 2016. Pl. Dep. 171:15-17.  Because Plaintiff's requests for access to the HUB began at least two years before her discharge, the circumstances are simply far too attenuated to support any inference of causation on the basis of those requests.  *See*, *e.g.*, *Murray v. Warren Pumps*, 821 F.3d at 87-88 (affirming summary judgment on ADA retaliation claims for failure to establish causation where plaintiff because requesting accommodations in 2008 and made another in 2010 and his termination did not occur until 2011); *Malley v. Massachusetts Office on Disability*, 95 Mass. App. Ct. 1103, 124 N.E.3d 159 (2019) (Rule 1:28) (concluding that chronology of events did not support inference that employer's commencement of disciplinary action against employee was causally related to request for accommodation, where record showed employer had allowed multiple prior requests for accommodation over more than two year period prior to discipline); *Dube v. Middlesex Corp.*, 59 Mass. App. Ct. 734, 740–41 (2003) (concluding that plaintiff's retaliation claim failed as a matter of law where plaintiff's requests for accommodation began more than three years prior to challenged employment action and continued throughout three-year period, during which plaintiff did not suffer any adverse employment action).

Because Plaintiff cannot establish that her discharge was causally connected to her requests for access to the HUB, her retaliation claim cannot survive summary judgment.

### C.      Defendant Had A Legitimate Non-Discriminatory/Non-Retaliatory Reason For Plaintiff's Discharge

Even if Plaintiff were able to establish a *prima facie* case of discrimination or retaliation, Defendant indisputably had a legitimate nondiscriminatory/nonretaliatory reason for discharging her.  Defendant made the decision to discharge Plaintiff given the magnitude of the billing issue

with Client X, her actions in the wake of the billing issue and the consequences and potential consequences to Defendant of her actions.  Defendant's Answers to Plaintiff's Interrogatories, attached as Exhibit 5 to the Massey Decl., at Int. 14.

Plaintiff admits she posted the May Invoices without sending them to Client X and let them sit - poised for collection - for over a month and then, without communicating with anyone, reversed the May Invoices and posted the July Invoices and sent them to Client X.  Pl. Dep. 154:14-24; 155:9-14; 157:16-21; 158:1-4.  Then, without consulting anyone, she chose to reach out to Client X about the overpayment, trying to play it down as a non-event by simply asking them if they would like the money refunded and offering no explanation for how this significant overpayment had occurred.  Pl. Dep. Ex. 24; Pl. Dep. 162:8-24-163:1-12; 163:13-24-164:1-24.  Plaintiff's actions set off a "firestorm" with Client X that resulted in its General Counsel fearing for his own job because of the substantial overpayment Client X made as a result of Plaintiff's errors.  Cudkowicz Dep. 20:19-24; 21:2-8; 95:5-9.  As Defendant feared would be the case at the time of Plaintiff's discharge, Client X ended its relationship with Defendant as a result of Plaintiff's errors.  Cudkowicz Dep. at 38:1-17.

Without question, based on these facts, Defendant had a legitimate nondiscriminatory/ nonretaliatory reason for terminating Plaintiff's employment.

### D.   Plaintiff Cannot Establish That Her Discharge Was A Pretext For Discrimination Or Retaliation

Because it has established a legitimate, nondiscriminatory reason for Plaintiff's discharge, Defendant is entitled to summary judgment on Plaintiff's ADA claim unless Plaintiff demonstrates that Defendant's proffered reason was not the true reason for her discharge.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993); *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681-82 (2016).  However, Plaintiff cannot do this.  To begin, Plaintiff admits she was

advised at the time of her discharge that she was being let go because of the issue with Client X.

Pl. Dep. 172:10-24.  And it is clear that Plaintiff was discharged as a result of the issue with

Client X because she was discharged promptly after the issue was discovered (when Client X

reached out to Mr. Michaelis about the overpayment) and Defendant's investigation into the

issue was completed.

Moreover, there is no record evidence from which a reasonable jury could conclude that

that the real reason Plaintiff was discharged was because of her disability or because she had

requested access to the HUB.[5]  On the facts of this case, it makes no sense to suggest that

Defendant would terminate Plaintiff's employment because of her disability or an alleged request

for accommodation.  Defendant hired Plaintiff knowing she had Crohn's disease.  Pl. Dep. 57:2-

58:3.  For approximately nine years  -- from the inception of her employment through the time of

her discharge -- Defendant provided Plaintiff with an accommodation.  Indeed, Plaintiff was

permitted to work a reduced schedule from home on Wednesdays, as she requested, even though

no other biller in the Boston office was allowed to work from home.  Pl. Dep. 53:22-54:3; 55:19-

---

[5]      Notably, Plaintiff carries a heavy burden on her disability discrimination and retaliation claims. Plaintiff needs to persuade a jury that her disability was the "but for" cause of her discharge.  *See Figueroa-Carrasquillo v. Axiscare Health Logistic, Inc.*, No. CV 13-1718 (DRD), 2018 WL 8619913, at *11 (D.P.R. July 30, 2018) ("But under the ADA, as *Lewis* and *Serwatka* held, a plaintiff must show that the disability was the "but for" cause of the employer's adverse decision. That is, for liability to attach upon this claim, Figueroa must show 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct'") (citing S*erwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010 and *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012)); *Audette v. Town of Plymouth, MA*, 858 F.3d 13, 20 n. 8  (1st Cir. 2017) (the "Massachusetts's handicap discrimination statute, Massachusetts General Laws chapter 151B, § 4, is 'nearly identical' to the ADA . . . we analyze the statute in exactly the same manner as the ADA.").  Likewise, Plaintiff needs to prove to a jury that her alleged protected conduct was the "but for" cause of her discharge. *See Palmquist v. Shinseki*, 689 F.3d 66, 73–74 (1st Cir. 2012) ("The only way to give the wording of section 501 any practical effect is to find that the ADA's but-for causation standard controls whether a defendant is liable for retaliation"); This "but for" standard applies to Plaintiff's retaliation claim under state law as well. *See Simon v. Harvard Vanguard Med. Assocs., Inc.*, No. CV 14-12558-RGS, 2015 WL 7201170, at *6 (D. Mass. Nov. 16, 2015) (applying same "but for" causation standard in ADA and Chapter 151B retaliation case, noting "there is no need to discuss [plaintiff's] state and federal disability discrimination claims separately").

23; 56:8-14; Pl. Dep. Exs. 5 and 6; Pl. Dep. 153:3-11.  Plaintiff was allowed to arrive late or

leave early as needed on account of her disability and was not required to provide a doctor's note

and was not disciplined or otherwise penalized as a result.  Pl. Dep. 65:4-13; 99:7-11.

Under these circumstances, no reasonable jury could find that Plaintiff was discharged

because of her disability or requesting an accommodation for that disability.  *See E.E.O.C. v.

Amego, Inc*., 956 F. Supp. 1039, 1046 (D. Mass. 1996), *aff'd,* 110 F.3d 135 (1st Cir. 1997)

(summary judgment granted to employer on disability claim where "the facts show a willingness

on [defendant's] part to accommodate [employee] to permit her to get treatment for

her bulimia and depression . . . [and where defendant] did not simply fire her [when it learned of

her conduct abusing medications], as it might legitimately have done, but rather sought to make

sure it was not acting too hastily and to see if some accommodation might be made"); *Tyndall v.

Nat'l Educ. Ctrs., Inc. of California,* 31 F.3d 209, 215 (4th Cir. 1994) ("An employer who

intends to discriminate against disabled individuals or holds unfounded assumptions that such

persons are not good employees would not be apt to employ disabled persons in the first place.");

*Simon*, 2015 WL 7201170, at *7 (concluding that plaintiff failed but for causation standard

because he failed to present material evidence rebutting defendant's nondiscriminatory

explanation for plaintiff's termination -- that he failed to satisfy a performance improvement

plan); *Duryea v. MetroCast Cablevision of New Hampshire, LLC*, No. 15-CV-164-LM, 2017

WL 1450219, at *12 (D.N.H. Apr. 21, 2017) (concluding plaintiff failed to prove pretext in part

because "[t]he record shows that throughout [plaintiff's] five years of employment, [defendant]

routinely made an effort to accommodate her disabilities and allowed her to take time off when

needed"); *see also Lenzen v. Workers Comp. Reinsurance Ass'n*, 705 F.3d 816, 820 (8th Cir.

2013) (affirming summary judgment to employer under ADA where "evidence does not support

an inference that this rationale was a pretext for disability discrimination because [defendant] accommodated [plaintiff's work restrictions for years, allowing her to take a nap every day") (internal citation omitted).[6]

Plaintiff may disagree with Defendant's decision to discharge her, but that does not make the decision an illegal one.  In discrimination and retaliation cases, a court's "task is not to evaluate the soundness of [the employer's] decision making, but to ensure it does not mask discriminatory animus." *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 56 (2005); *Ray v. Ropes & Gray LLP*, 961 F. Supp. 2d 344, 356 (D. Mass. 2013) (anti-discrimination laws "outlaw[] only employment decisions made for discriminatory reasons, not those resulting from poor business judgment").  *See also Pina v. Children's Place*, 740 F.3d 785, 798 (1st Cir. 2014) ("Courts may not sit as super personnel departments, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions.").

For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's disability discrimination and retaliation cases.

## II.   PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT

In order to prove disability-based harassment by means of a hostile work environment, Plaintiff must show that she was "(1) disabled, (2) that [s]he was subjected to a hostile environment, and (3) that the hostility was directed at [her] because of [her] disability." *Zemrock*

---

[6] In addition, as noted, *supra* in Part I.A, Plaintiff has not identified any similarly situated non-disabled employees who were treated differently than she was.  This too completely undermines any claim of pretext.  *See Tobin v. Liberty Mut. Ins. Co*., 433 F.3d 100, 106 (1st Cir. 2005) (affirming summary judgment to employer where plaintiff failed to prove pretext, noting that plaintiff failed to evidence of similarly situated employees who were treated more favorably); *Furtado v. Standard Parking Corp*., 820 F. Supp. 2d 261, 273 (D. Mass. 2011) ("Because [Plaintiff] has not established that a similarly situated employee was treated differently, and because the record reflects his repeated misuse of the company cell phone and otherwise poor job performance, [Plaintiff] has failed to raise a genuine factual dispute as to pretext.").

*v. Yankee Candle Co.*, No. 14-CV-30107-KAR, 2017 WL 506249, at *6 (D. Mass. Feb. 7, 2017)

(describing hostile work environment claim under both ADA and Massachusetts law) (citing

*Quiles-Quiles v. Henderson*, 439 F.3d 1, 5 (1st Cir. 2006)).  To establish a hostile work

environment existed, Plaintiff must show that her "workplace [was] permeated with

discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter

the conditions of . . . [her] employment and create an abusive working environment."  *Zemrock*,

2017 WL 506249, at *6 (internal citation omitted); *see also Coll.-Town, Div. of Interco, Inc. v.*

*Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987) (defining a hostile

work environment as one that is "pervaded by harassment or abuse, with the resulting

intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full

participation of an individual in the workplace").  "The standard is sufficiently demanding to

ensure that employment discrimination statutes [do] not become a general civility code in the

workplace."  *Id.*

Plaintiff's claim cannot survive summary judgment because there is no evidence that a

legally cognizable hostile work environment existed, let alone one related to her medical

condition.  Plaintiff alleges that Ms. McBride belittled her, "pok[ed] fun" at her, made comments

about her hair, shoes and attire, and "aggressively hush[ed]" her in meetings.  Pl. Dep. 179:20-

180:24; 181:1-8.  Plaintiff further claims that Ms. McBride created a hostile work environment

for her by "making [Plaintiff] look very bad to people" and making people think "poorly of her."

Pl. Dep. 185:13-17.

First and foremost, these alleged actions had nothing to do with Plaintiff's disability.

Indeed, Plaintiff herself admits that she does not know what Ms. McBride's motivation was for

"harassing" her.  Pl. Dep. 184:21-24.  Hostile work environment claims under federal and state

law require showing that plaintiff "was subjected to harassment based on her membership in that class." *Eswarappa v. Cmty. Action Inc./Head Start*, No. CV 14-14255-FDS, 2017 WL 3202724, at *8 (D. Mass. July 27, 2017) (citing *Rosario v. Dept. of Army*, 607 F.3d 241, 246 & n.12 (1st Cir. 2010)); *see also Navarro v. U.S. Tsubaki, Inc.*, 577 F. Supp. 2d 487, 509 (D. Mass. 2008) (hostile work environment claims under Chapter 151B require plaintiff to demonstrate that "the harassment was based on membership in the protected class") (emphasis added).

Moreover, the conduct of which Plaintiff complains is not sufficiently serious to rise to the level of a hostile work environment.  These allegations fall squarely into the category of unactionable "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir. 2001) ("offhand comments, and isolated incidents are not sufficient to create actionable harassment") (internal quotation marks and citation omitted); *Thirkield v. Neary & Hunter OB/GYN, LLC*, 76 F. Supp. 3d 339, 350–51 (D. Mass. 2015) ("Unanimous authority holds … that a Plaintiff who is shunned or subjected to the silent treatment … has not suffered a materially adverse employment action"); *MacCormack v. Bos. Edison Co.*, 423 Mass. 652, 664 (1996) (employee's "subjective feelings of disappointment and disillusionment" are not actionable discriminatory conduct).[7]

---

[7]The allegations of harassment Plaintiff raises in this case fall well short of the conduct that the First Circuit  has found sufficiently severe or pervasive to permit liability for a hostile work environment claim based on disability.  *See e.g., Quiles-Quiles*, 439 F.3d at 7  (affirming jury verdict in favor of employee with mental disability on hostile work environment claim where employee was "subject to daily ridicule about his mental impairment" and employee's supervisors laughed and stated employee was "crazy" after employee presented supervisor with a psychiatrist's note and  proceeded to call plaintiff "crazy" on a "daily basis" and constantly "'joked' in front of coworkers and customers about the fact that [plaintiff] saw a psychiatrist and took medication for his condition," "including remarks about the effect that the medication had on [plaintiff's] ability to have sexual relations with his wife")*; Arrieta-Colon v. Wal-Mart Puerto Rico, Inc.*, 434 F.3d 75, 89 (1st Cir. 2006) (affirming jury verdict in favor of plaintiff on disability-based hostile work environment claim where there was evidence that employee was subjected to "constant mockery and harassment ... due to his condition" by supervisors and co-workers; supervisor and co-workers repeatedly made fun of employee's corrective penile implant, asking plaintiff "how it felt

For these reasons, Plaintiff's hostile work environment claim has no basis in fact or law and cannot withstand summary judgment.

## III.   PLAINTIFF CANNOT ESTABLISH A FAILURE TO ACCOMMODATE

To make out a *prima facie* case of failure to provide a reasonable accommodation under Chapter 151B, Plaintiff must show: (1) that she is a "qualified handicapped person" capable of performing the essential functions of his job with reasonable accommodation; (2) that she requested such accommodation; (3) that Defendant refused to provide the accommodation; and, (4) as a result of this refusal, Plaintiff suffered some harm. *Alba v. Raytheon Co.*, 441 Mass. 836, 843 n.9 (2004); *Smith v. Bell Atl.*, 63 Mass. App. Ct. 702, 711 (2005) (same).[8] As explained below, Plaintiff cannot establish a *prima facie case* of failure to accommodate because her request for access to the HUB was not a request for accommodation, and in any event there is no evidence that Plaintiff's access to Defendant's e-billing system was medically necessary or that Defendant was required to provide it.

### A.   Plaintiff Did Not Request an Accommodation for a Disability

To establish a *prima facie* case of failure to provide a reasonable accommodation, "the plaintiff has the burden of showing that she 'sufficiently requested the accommodation in question.'" *Freadman*, 484 F.3d at 102 (*quoting Reed v. LePage Bakeries, Inc.*, 244 F.3d 254,

---

to have [his] new pump," taunting plaintiff about having had corrective surgery, mocking plaintiff as impotent, and suggesting that plaintiff had unusual sexual endowment as a result of corrective surgery; court noted that "this harassment was constant and unbearable, leading to [plaintiff's] resignation").

[8] The elements of a failure to accommodate claim are substantially the same under federal law. *See, e.g., Sepulveda-Vargas v. Caribbean Restaurants, LLC*, 888 F.3d 549, 553 (1st Cir. 2018) (failure to accommodate claim under ADA requires showing, inter alia, that "the employer knew of the disability but declined to reasonably accommodate it upon request") (emphasis added); *Murray v. Warren Pumps, LLC*, No. CIV.A. 11-40176-DPW, 2013 WL 5202693, at *3–4 (D. Mass. Sept. 12, 2013), *aff'd*, 821 F.3d 77 (1st Cir. 2016) (stating that, under the ADA and Chapter 151B, prima facie case of failure to accommodate "requires a Plaintiff to show … that he requested a reasonable accommodation, [] that his employer refused the accommodation, and [] that he suffered harm from the employer's refusal") (citing *Alba*, 441 Mass. at 843 n. 9).

260 (1st Cir. 2001)).   As set forth, *supra* in Part I.B, Plaintiff's request for access to the HUB

did not constitute a request for accommodation for her disability under applicable law.  That

deficiency alone warrants summary judgment on Plaintiff's failure to accommodate claim.  *See*,

*e.g.*, *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012) (concluding that summary

judgment on failure to accommodate was proper where employee "did not link [his] request to

his now-claimed disability"); *Reed*, *supra* at 260-62 (affirming grant of summary judgment on

employee's failure to accommodate claim where plaintiff did not adequately request

accommodation).

### B.     Defendant Was Not Required To Provide Access To The HUB To Plaintiff

Even if Plaintiff's request for access to the HUB could be interpreted as a request for

accommodation, Defendant was not required to provide such an accommodation because she

never provided any evidence that it was medically necessary.  *See Ekstrand v. Sch. Dist. of

Somerset*, 583 F.3d 972, 976 (7th Cir. 2009) (an employer is not be "obligated to provide a

specifically requested accommodation unless the employer is made aware of its medical

necessity to the employee."); *id.* ("Thus, our cases have consistently held that disabled

employees must make their employers aware of any nonobvious, medically necessary

accommodations with corroborating evidence such as a doctor's note or at least orally relaying a

statement from a doctor, before an employer may be required under the ADA's reasonableness

standard to provide a specific modest accommodation the employee requests.").  *See also* 29

C.F.R. pt. 1630 app. § 1630.9 ("When the need for an accommodation is not obvious, an

employer, before providing a reasonable accommodation, may require that the individual with a

disability provide documentation of the need for accommodation."); *Cargill v. Harvard Univ.*, 60

Mass. App. Ct. 585, 603 n.19 (2004) ("The employer may direct the employee to provide

reasonable documentation from a health care provider of the existence of a handicap and the

need for reasonable accommodation.") (*quoting* MCAD Guidelines: Employment Discrimination on the Basis of Handicap, § II.C).  The only accommodation Plaintiff's doctor requested on her behalf was the schedule Plaintiff has had from the beginning of her employment.  *See* Pl. Dep. Ex. 14.

Moreover, employers are not obligated to provide the specific accommodation the employee requests.  *See Bryant v. Caritas Norwood Hosp.*, 345 F. Supp. 2d 155, 169 (D. Mass. 2004) ("the ADA requires employers to offer *a* reasonable accommodation, not necessarily *the* accommodation sought") (emphases in original); *Finlan v. Verizon New England, Inc.*, No. 024616G, 2006 WL 2423808, at *12 (Mass. Super. July 31, 2006), *aff'd*, 74 Mass. App. Ct. 1127, 910 N.E.2d 418 (2009) ("In determining the type of reasonable accommodation required for an applicant or employee, the employer need not provide the best accommodation available, *or the accommodation specifically requested by the individual with the handicap*") (internal quotation marks omitted, emphasis in original; *quoting* MCAD Guidelines, Section II.C); *cf. Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 897 (7th Cir. 2003) (observing that the fact that employee "can perform all essential elements of her job without any accommodation" militates against finding that requested accommodation is reasonable).

When Plaintiff requested access to the HUB, she was told that she could have access if she first cleared up her backlog of bills, and Defendant assigned an e-biller to assist Plaintiff in clearing her backlog.  Pl. Dep. 132:11-12; Pl. Dep. Exs. 15, 17.  Indeed, the uncontroverted evidence indicates that Plaintiff did not require access to the HUB to clear up her backlog because Ms. Dane Deeney -- who did not have access to the HUB -- cleared up Plaintiff's billing backlog by working with e-billers and clients to fix and finalize the outstanding bills.  Dane-Deeney Dep. at 8:7-8, 47:10-48:8, 49:6-11.

For these reasons, Plaintiff's failure to accommodate claim cannot survive summary judgment.

## CONCLUSION

For the reasons above, Defendant respectfully requests that the Court grant its motion for summary judgment on all counts in Plaintiff's Amended Complaint.

DATED:  August 19, 2019                DEFENDANT SEYFARTH SHAW LLP,

By its Attorneys,

*/s/ Hillary J. Massey*
Karla Grossenbacher (Admitted *Pro Hac Vice*)
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
Tel:  (202) 828-5395
kgrossenbacher@seyfarth.com

Hillary J. Massey (BBO# 669600)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
Tel:  (617) 946-4879
Fax:  (617) 946-4801
hmassey@seyfarth.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2019, a copy of the foregoing document was filed electronically through the Court's ECF system and emailed to Plaintiff.

*/s/ Hillary J. Massey*
Hillary J. Massey